AO108(2/90) Application for Seizure Warrant

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

In the Matter of the Seizure of
(Address or brief description of property or premises to be seized)

Any and all net sale proceeds from one 2005 Hummer, VIN#: 5GTDN136168301064, currently in the possession of the lien holder, United States Federal Credit Union, located at 2750 Eisenhower Avenue, Alexandria, Virginia 22314

**AFFIDAVIT AND APPLICATION FOR SEIZURE WARRANT**

CASE NUMBER:

I, __Debra L. LaPrevotte__ being duly sworn depose and say:

I am a __Special Agent with the Federal Bureau of Investigation__ and have reason to believe that within the jurisdiction of this Court there is now certain property that is subject to forfeiture to the United States, namely: (describe the property to be seized):

 Any and all net sale proceeds from one 2005 Hummer, VIN#:5GTDN136168301064, currently in the possession of the lien holder, United States Federal Credit Union, located at 2750 Eisenhower Avenue, Alexandria, Virginia 22314

which is/are: (state one or more bases for seizure under the United States Code)

 property constituting, or derived from any proceeds obtained directly or indirectly, as the result of one or more violations of 18 U.S.C. § 1341 and/or property involved in money laundering, in violation of 18 U.S.C. §1956; subject to seizure pursuant to 18 U.S.C. §§ 981(b); 982(b), and 21 U.S.C. § 853(f) (incorporating 28 U.S.C. § 2461(c)), and subject to forfeiture pursuant to 18 U.S.C. §§ 981(a) and 982(a).

The facts to support a finding of Probable Cause for issuance of a Seizure Warrant are as follows:

 SEE ATTACHED AFFIDAVIT HEREIN INCORPORATED BY REFERENCE AS IF FULLY RESTATED HEREIN.

Continued on the attached sheet and made a part hereof. ☒ YES ☐ NO

Diane Lucas
Asset Forfeiture Unit, Criminal Division
(202) 514-7912

Signature of Affiant
Debra L. LaPrevotte, Special Agent
Federal Bureau of Investigation

Sworn to before me, and subscribed in my presence

_____
Date

at Washington, D.C.

_____
Name and Title of Judicial Officer

_____
Signature of Judicial Officer

## AFFIDAVIT OF SPECIAL AGENT DEBRA L. LaPREVOTTE

DEBRA L. LaPREVOTTE, being duly sworn, deposes and states the following:

## ITEMS TO BE SEIZED

1. This affidavit is in support of a seizure warrant for the following item:

**Any and all net sale proceeds from one 2005 Hummer, VIN#: 5GTDN136168301064, currently in the possession of the lien holder, United States Federal Credit Union, located at 2750 Eisenhower Avenue, Alexandria, Virginia 22314.**

## AFFIANT'S EXPERIENCE

2. I am a Special Agent ("SA") employed by the Federal Bureau of Investigation (FBI). I have been so employed for twelve (12) years. Currently, I am assigned to the Asset Forfeiture/Money Laundering Squad in the FBI's Washington, D.C., Field Division (Northern Virginia Resident Agency). My investigative assignments while in the Asset Forfeiture/Money Laundering Squad include investigating the asset forfeiture aspects of suspected violations of the federal anti-money laundering statutes (18 U.S.C. §§ 1956 and 1957), as well as mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), bank fraud (18 U.S.C. § 1344), and health care fraud (18 U.S.C. § 1347) violations. I have received extensive training in advanced money laundering techniques and complex financial manipulation.

3. I am currently assisting SA Andrew Sekela, FBI, Washington Field Office and SA Matt Walsh, FBI Baltimore Field Office. SA Sekela is assigned to investigate public corruption matters and SA Walsh is a assigned to investigate money laundering matters.

4. The information contained in this affidavit is based on my personal knowledge and observations accumulated during the course of this investigation; on information conveyed to me by other law enforcement personnel; and on my review of documents, including interview

reports. The affidavit is submitted for the limited purpose of establishing probable cause in support of this application for seizure warrant. Thus, it does not contain every fact known by me or the United States.

## PURPOSE OF APPLICATION AND LEGAL DISCUSSION

5. The Federal Bureau of Investigation and the District of Columbia are investigating allegations that Harriette Walters ("Walters") and others conspired to defraud the District of Columbia government ("DC") of over $20,000,000 by submitting false claims for property tax refunds, and by receiving over fifty unwarranted property tax refund checks. The DC government checks obtained as a result of the scheme were deposited into bank accounts associated with the conspirators. On at least one occasion, as part of the scheme, the U.S. mail was used to send a false document from the District of Columbia to one of the conspirators in Maryland.

6. This affidavit is submitted in support of a seizure warrant for the above listed item by a civil and criminal seizure warrant pursuant to 18 U.S.C. § 981(b), 18 U.S.C. § 982(a), and 28 U.S.C. § 2461(c) (incorporating 21 U.S.C. § 853(f)).

7. Based on the facts set forth in this affidavit, there is probable cause to believe that the subject property is traceable to proceeds of a mail fraud scheme and/or constitutes property involved in money laundering and/or a conspiracy to commit those offenses, and is subject to seizure and forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C), which provides for the forfeiture of property constituting or derived from proceeds traceable to mail fraud (in violation of 18 U.S.C. § 1341), and pursuant to 18 U.S.C. § 981(a)(1)(A), which provides for the forfeiture of any real or personal property that is involved in a money laundering offense in violation of 18 U.S.C. §§

1956, 1957, and/or 1960.

## PROBABLE CAUSE

8. The investigation revealed that from at least January 2001 through September 2007, there is reason to believe that Walters conspired with others to defraud the government of the District of Columbia of more than $20,000,000 through negotiation of fraudulently obtained property tax refund checks. Walters was employed at the Office of Tax and Revenue ("OTR"), which is part of the District of Columbia Office of the Chief Financial Officer ("OCFO"). Walters' title was Manager, Real Property Tax Administration Adjustment Unit at OTR.

9. Walters caused false or fraudulent property tax refund requests to be created. She then approved those refund requests, based on her position in the DC government. Once a fraudulently generated check was issued, Walters, or someone acting on her behalf, picked up the check from a DC government office. Walters, or one of her co-conspirators, then deposited the check in a bank account under the control of one of the co-conspirators. Most of the conspirators maintained bank accounts at Bank of America, and later at SunTrust Bank.

10. To facilitate the scheme and to make the fraudulently obtained property tax refund checks appear legitimate, Walters often made the checks payable to a company (listed as the payee or co-payee on the check) that either she or her co-conspirators controlled. While Walters and her co-conspirators used some pre-existing companies, at least one of the companies was created expressly for the purpose of depositing fraudulently obtained checks. It had no legitimate function.

11. A review of approximately 30 of the fraudulently obtained DC refund checks was conducted, and the majority of those checks were deposited into accounts under the control of

Jayrece Turnbull at Bank of America and SunTrust Bank. In excess of $14,000,000 in proceeds from the scheme flowed through accounts controlled by Jayrece Turnbull before being disbursed to other accounts and conspirators.

12. A review of bank records for Harriette Walters, Richard Walters, Jayrece Turnbull and others associated with this scheme is being conducted. It has revealed, in part, that over the past seven years more than $8.5 million dollars was deposited into Bank of America accounts under the control of Harriette Walters, and $2.47 million dollars was deposited into accounts under the control of her brother, Richard Walters. Your affiant has reviewed receipts from several high end retail stores and found that Harriette Walters spent more than $1.4 million dollars at Neiman Marcus, and approximately half a million dollars at Saks Fifth Avenue, and made additional purchases at the Louis Vuitton Store, Nordstrom's and Macy's.

13. Based on information obtained from OTR, and from interviews and documents located during search warrants, your affiant is aware that Harriette Walters earned approximately $87,000 per year working for the DC government. This source of legitimate income is not sufficient to support the items purchased by Harriette Walters over the past several years.

14. Your affiant has reviewed bank records for Harriette Walters, Jayrece Turnbull and others associated with this scheme, to trace funds from the fraudulently obtained DC Government Tax Revenue checks to their ultimate recipient(s). For example, on May, 4, 2007, Jayrece Turnbull deposited a fraudulently obtained DC Government check in the amount of $398,680 into Bank of America account #XXXXX2467, held in the name of Jayrece Turnbull, d/b/a Chapa Interiors. On the same day, Jayrece Turnbull wrote check #5032 made payable to Harriette Walters in the amount of $50,000. Walters cashed this check and purchased three

cashier's checks: a $15,000 cashier's check made payable to Diane Gustus (a co-worker of Walters); a $10,000 cashier's check made payable to Nicole Mathews (a co-worker of Walters); and a $9,000 cashier's check made payable to Walters. A review of the bank records reveal that Harriette Walters and Jayrece Turnbull used this method to disburse proceeds from the fraud scheme to others.

15. Based on the investigation to date, Walters bestowed lavish gifts, including money and personal property, to friends, family members, and co-workers.

**2005 Hummer, VIN: 5GTDN136168301064**

16. On December 3, 2007, Nicole Mathews was interviewed by your affiant. A review of Nicole Mathews' seven bank accounts at Bank of America revealed that she deposited checks from Harriette Walters into several of her accounts. For example, on August 1, 2005, Mathews deposited a check from Walters for $10,000 into Mathews' Bank of America account #xxxxx3641. On or about July 13, 2007, Mathews deposited another check from Walters for $10,000 into that same account.

17. Your affiant reviewed other cashier's checks purchased by Harriette Walters and made payable to Nicole Mathews, including the following checks:

| Date | Amount of Cashier's Check |
| --- | --- |
| December 2, 2004 | $10,000 |
| May 13, 2004 | $10,000 |
| January 3, 2005 | $10,000 |
| September 15, 2005 | $15,000 |
| March 6, 2006 | $10,000 |

    October 18, 2006  $10,000

 18. Mathews told your affiant that she received in excess of $89,000 in money gifts from Walters over the years. In addition to checks described above, Mathews stated that Walters gave her a $20,000 cashier's check in 2005. Mathews stated she signed over the $20,000 cashier's check to Mercedes Benz of Annapolis for a down payment towards the purchase of a used 2002 Mercedes Benz, VIN: 4JGAB54E52A346197. Mathews stated that the total purchase price of the Mercedes was $32,000, and that she financed the remaining $12,000 with the Mercedes Benz Credit Corp. Mathews said she later refinanced her house and paid-off the remaining balance on the 2002 Mercedes Benz.

 19. In June, 2006, Mathews traded-in the 2002 Mercedes Benz, VIN: 4JGAB54E52A346197, for a 2005 Hummer H3, VIN: 5GTDN136168301064, at the Cadillac/Hummer dealership in Greenbelt, Maryland. Mathews stated that the total purchase price of the 2005 Hummer was $29,000. Mathews said she paid for the 2005 Hummer by receiving a $12,000 trade-in credit for the 2002 Mercedes Benz, VIN: 4JGAB54E52A346197, and financing the remaining balance of $20,000 with the United States Senate Federal Credit Union. At the time of the interview, Mathews stated that she was still making payments on the balance of this loan.

 20. On March 18, 2008, the affiant obtained a federal seizure warrant for the 2005 Hummer H3, VIN: 5GTDN136168301064. Upon contacting Mathews about executing the seizure warrant, affiant learned that the vehicle had been repossessed by the United States Senate Federal Credit Union on or about March 17, 2008, and is currently in the lien holder's possession.

21. On March 18, 2008, the undersigned contacted a representative of the United States Senate Federal Credit Union and was told that Mathews failed to make payments on her vehicle loan for the months of January, February and March 2008, which prompted the lien holder to repossess the vehicle. The representative told affiant that in the ordinary course of a repossession, the vehicle would be sold. If the sale of the vehicle generated more funds than the balance of the lien and any costs relating to the repossession and sale of the vehicle, the owner of the vehicle would be entitled to the net proceeds of the sale.

22. The representative told your affiant that the 2005 Hummer is worth approximately $22,000, and that the remaining balance on the lien was approximately $15,000. Thus, there should be approximately $7,000 after the sale of the 2005 Hummer, VIN: 5GTDN136168301064 that is subject to forfeiture.

23. Based on the information contained in this affidavit, there is probable cause to believe that the Nicole Mathews purchased the 2005 Hummer, VIN: 5GTDN136168301064 using, in part, proceeds traceable to Walter's scheme to defraud the District of the Columbia, and that any and all net proceeds of the sale of the 2005 Hummer, VIN: 5GTDN136168301064, by the United States Senate Federal Credit Union, is therefore subject to seizure and forfeiture. It is therefore requested that a seizure warrant be issued for any and all net proceeds of the sale of the 2005 Hummer, VIN#: 5GTDN136168301064 currently in the possession of the lien holder,

United States Federal Credit Union, located at 2750 Eisenhower Avenue, Alexandria, Virginia 22314.

_____
Debra LaPrevotte, Special Agent, FBI

Sworn to and subscribed before me on this_____ day of March, 2008.

_____
United States Magistrate Judge